GUNTER v. GUNTER.

1. A finding of fact by the Probate judge, concurred in by the Circuit judge, affirmed.

2. Where discretion given to executors under a will is unlimited, it cannot be controlled by the courts unless there be a manifest and flagrant refusal to exercise it, and with the view to defeat the intent of the will.

3. A testator directed his executors to convert the residue of his estate into money "and place it in bank, or safe hands, as they may think best, the interest to be applied for the education and maintenance of my two children. * * * I repeat * * * the remainder of property * * * to be converted into money by my executors and put in bank or safe hands for the use of my two children as they may think best." *Held*, that the discretion given to the executors related to the investments, but that it was their positive duty to apply the interest of the invested fund to the wants of the children, which duty the court could enforce on the application of the children.

4. In construing a will, all the parts must be considered, and effect given to each in harmony, if possible.

Before HUDSON, J., Aiken, February, 1882.

This was an action in the Court of Probate to require Uriel X. Gunter, sole qualified executor of the will of Daniel B. Gunter, to carry out its provisions. The will was as follows:

*In the name of God, amen!* I, Daniel B. Gunter, being of sound mind, and knowing the uncertainty of life, and the certainty of death, do make, declare and publish, this, my last will and testament, that as soon after my death as is convenient, that my funeral and burial expenses be paid. I then give and bequeathe unto my beloved wife, Amanda C. Gunter, and my two children, use of my home place on which I now live, to cultivate only, also all my farming tools, gears, hoes, axes, wagons, carts, stock of provisions now made and on hand, my mule, oxens, cows, hogs, household and kitchen, furniture, and one hundred dollars in money.

The above mentioned articles and property, I give to my wife as before mentioned on the following conditions, that is: she is to have it so long as she remains a widow and does not marry; but if she marries any one then she forfeits her claim to all I give her. I direct that my executors on her marrying, sell the property given her, and place it to the benefit of my two children above mentioned. The above property to be appraised by three persons, so that my executors may know the amount given her. The balance of my property, excluding my monies, notes, accounts on books, and otherwise, cotton, goods, and all kinds of merchandise, in store, and all that I may leave, from any source including my mothers and brothers estates, and all lands excepting my home place above mentioned, I direct my executors to convert into money, and place in bank or safe hands, as they may think best, the interests to be applied for the education and maintenance of my two children above named, and if my executors think or is satisfied that the above interest and what I have given my wife is not sufficient for education, clothing, and other needs, they are to draw on the principal sufficient for the above requirements. My two children to share and share alike, and in case one should die, before becoming of age, or has any lawful children, then the other to heir the deceased one's share, and in case of the death of both, before becomming of age, or having any lawful children, in that case I direct that all my property, both personal and real, shall go to my two brothers Ucal and U. X. Gunter, and their heirs to share and share alike. Now that this my last will and testament, may be understood, I again repeat, that I have given to my wife, household and kitchen furniture, plantation tools, mule, oxen, cows, hogs, carts, provisions, and one hundred dollars in money, as above mentioned, during her

widowhood, but if she marries she forfeits her claim to it, and to be disposed as I have directed. The remainder of property both real and personal including all monies, notes, accounts, cotton on hand, goods and merchandise in store, or on hand, and all that may come to me from heirship, rents or any wise, to be converted into money, by my executors, and put in bank or safe hands, for the use of my two children as they may think best, and in case of the death of my two children, as above mentioned, then my two brothers and their heirs to have all my property, both personal and real.

And I do hereby appoint my beloved brother Uriel X. Gunter and my relatives and friends, Seaborn Jones, John E. Jones and W. A. Lybrand, executors to this my last Will and testament.

Given under my hand and seal this 22d day of January, in the year of our Lord, one thousand eight hundred and seventy-three.

(Signed,)     DANIEL B. GUNTER. [L. S.]

Signed in the presence of
U. X. GUNTER,
W. B. HUTTO,
JACOB HYDRICK.

The case is otherwise fully stated in the opinion of this court.

*Messrs. Croft & Dunlap*, for appellant.

*Messrs. Henderson Bros.*, contra.

October 25th, 1882. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. Daniel B. Gunter, late of Aiken county, died in 1873, leaving a will. [Here follows a statement of the will.] At the death of the testator, his two children were infants of tender years, being, respectively, at the time of the filing of the petition below, nine and twelve years of age. Shortly after the death of the testator, his widow, Mrs. Gunter, seems to have been placed in possession of the home place, and the personal property bequeathed to her, the executors offering to her, from time to time, some little assistance in money for the maintenance of the children.

Things remained in this condition until 1881, some eight years after the death of the testator, when Mrs. Gunter, in her

own right, and as guardian *ad litem* of her two children, filed a petition in the Probate Court for Aiken county, complaining that the executor had not complied with the will in several particulars, and especially that he had failed to contribute to the education and support of the children out of the interest of the funds, directed to be put at interest for their benefit, and praying that the said executor might be required to account, and that she should have such relief as justice and equity demanded. The case was heard by the Probate judge, and after full investigation it was developed that the only matters of real contest were, whether the executor should be required to pay to Mrs. Gunter any sum for deficiency in the support, maintenance and education of the children for the eight years preceding the petition, and whether anything should be allowed in the future until the further order of the court, and if so, how much, in each case, per annum.

The Probate judge, upon the testimony, decreed that the executor should pay to the petitioner the sum of $180 for the support of the children for the six years next after the death of the testator, $140 for their support and education for the two succeeding years, and that in the future he should pay, annually, the sum of $75, until the further order of the court, making the amount due the petitioner for past support and education, $320, which, added to $295.80, about which there was no dispute, amounted to $615.80. From this decree the defendant appealed to the Circuit Court, alleging error in the findings of the Probate judge as to the amounts allowed the petitioner, and claiming as matter of law that it was in the discretion of the executor to make such allowances as he deemed to the interest of the children, having due regard to their estate. The Circuit Court affirmed the judgment of the Probate Court in all respects, and dismissed the appeal, with costs. From this judgment of the Circuit Court, the case now comes before this court on appeal.

Two questions are presented for our consideration, first, whether the amount decreed to the petitioner for the past and future support and education of the children, is more than the evidence justified; and, second, whether the discretion of the executor, as to this matter, was subject to the control of the

court. The first being a question of fact, found by the Probate judge in the first instance and concurred in by the Circuit judge, this court will not disturb it under the decisions, unless there is manifest error in the finding, or the preponderance of testimony is against it. In looking through the evidence we see no such error; on the contrary, we think the evidence was quite sufficient to support the decree in this respect.

As to the second question, if it appeared from a proper construction of the will that the testator intended to leave the application of the interest on the fund which he directed to be invested for the benefit of his two children, entirely to the discretion of the executor, then the courts would not undertake to control that discretion, unless there was a manifest and flagrant refusal to exercise it, and with the view to defeat the intent and purpose of the will. A testator who, during his lifetime, has accumulated property, has the legal right to dispose of it as he sees proper, and, when he has done so, it would be an unwarranted and arbitrary exercise of power for any court to undertake to change, alter or modify in the least, such disposition. The law authorizes the citizens to make wills, but not the courts.

The question, then, in this case is: Did the testator leave the application of the interest on the fund mentioned solely to the discretion of the executor, and are the rights of the children as to that application dependent upon his will alone? On reading the will it cannot escape attention, that the children of the testator were especially and almost exclusively the objects of his bounty. He seems to have been so solicitous about their welfare as almost to have forgotten his wife, their mother. He gave his wife nothing, except the household furniture, some little stock and $100 in money, and the right to cultivate for herself and the children the home place—all this to be forfeited to the children in the event of her second marriage. He then directs the balance of his property, both real and personal, to be converted into money, the interest to be applied to the education and maintenance of his two children, with the power on the part of the executors, if they thought best, or became satisfied that this was not enough, to encroach upon the capital.

This direction is in the second clause of the will. Under it,

if not subsequently modified, the children would have a right to appeal to the courts in case the executor neglected or declined to furnish aid to their annual support and education, and the matter would not depend upon the mere will of the executor, but upon the evidence as to the needs and wants of the children. The interest on the invested fund was to be theirs, as their wants and necessities might demand, and upon a proper showing that such necessity existed in each case, the courts could not hesitate to afford relief, because such would evidently be the intent of the testator, and the intent in all cases governs.

Was this portion of the will subsequently changed or modified so far as the rights of the children were concerned? Lower down in the will, the testator repeats his direction for the conversion of the remainder of his property into money, and that it be invested for the children, using this language, " that it be put in bank or safe hands, for the use of my two children as they may think best." Did the testator intend to apply the words " as they may think best " to the investment in the bank or safe hands, or to the use of the children? Standing alone and unaided by the previous bequest of this interest for the benefit of the children, this question would not be entirely free from doubt; perhaps the strict grammatical construction might require that the use of the children should be qualified by these words, " as they, the executors, may think best."

But in construing a will, all the parts must be considered, and effect given to each in harmony, if possible. Governed by this rule, and looking to the specific direction of the first portion, that the interest of the invested fund should be applied to the education and maintenance of the children, with direction to the executors to draw upon the principal, if that was not sufficient, we think it was the positive duty of the executors to apply the interest, and in case they declined, that the children had the right to apply to the courts, to enforce its performance, their right to relief being dependent upon the evidence submitted as to their wants and necessities. That course has been adopted in this case, and both the Probate Court and the Circuit Court having found, after full investigation, that the necessity existed to the amount decreed, this court will not disturb that judgment.

It appears that the amount decreed for past support will not encroach on the original capital, nor will the allowance for the future support.

It is the judgment of this court that the judgment of the Circuit Court be affirmed.